IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YARED A. PEREZ-CINTRON, | ) | |
|       Plaintiff | ) | C.A. No. 18-155 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Susan Paradise Baxter |
| MILLCREEK TOWNSHIP, et al., | ) | |
|       Defendants. | ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

#### A.   Relevant Procedural History

On May 29, 2018, Plaintiff Yared A. Perez-Cintron initiated this civil rights action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983, against the following Defendants: Millcreek Township ("Millcreek"); Millcreek Township Police Department ("MPD"); Millcreek Police Detectives Adam Hardner ("Hardner") and Brian Fiorelli ("Fiorelli"); Millcreek Township Supervisors James Brock ("Brock"), John Groh ("Groh"), and John Morgan ("Morgan"); Millcreek Police Chief Scott Heidt ("Heidt"); Millcreek Police Captain Kabasinski ("Kabasinski"); and Millcreek Police officers Spiker ("Spiker"), Fritz ("Fritz"), Emerick ("Emerick"), and Zacherl ("Zacherl"). Plaintiff subsequently filed an amended complaint against the same Defendants [ECF No. 7], which is now the operative pleading in this case.

In his amended complaint, Plaintiff alleges multiple claims, including the use of false and fabricated evidence to procure a search warrant in violation of his Fourteenth Amendment due process rights, false arrest/false imprisonment under the Fourth Amendment, malicious prosecution, conspiracy, and failure to train and supervise the Defendant police officers. As relief

1

for his claims, Plaintiff seeks declaratory and injunctive relief, and monetary damages. Defendants' filed an answer to Plaintiff's amended complaint in October 16, 2018, and the parties have since completed discovery

Presently before the Court is Defendants' motion for summary judgment [ECF No. 36], In response to which Plaintiff has filed a brief in opposition [ECF No. 54]. This matte is now ripe for consideration.

### B.    Relevant Factual History[1]

On January 30, 2019, Plaintiff entered a guilty plea to charges of Knowingly Possessing Ephedrine (35 Pa. C.S. § 780-113) and Recklessly Endangering Another Person (18 Pa. C.S. § 2705), for which he was sentenced to 3-6 months confinement and 2 years' probation (ECF No. 38-1, at p. 5). These charges stem from a March 27, 2017 incident in which Julie Winters contacted the MPD and reported that she believed her sister, Mary Winters, was cooking methamphetamine inside her apartment at 5956 Josie Lane, Apt. 7 ("Subject Premises"), and that Mary's 6-year old son was inside (ECF No. 38, at ¶ 2).

After receiving the call, dispatch discovered that Mary Winters had an outstanding arrest warrant against her (Id. at ¶ 3). Based on this information, Defendants Spiker, Emerick, Zacherl, and Fritz, went to the Subject Premises with Julie Winters. When Mary Winters exited the Subject Premises to meet her sister, she was taken into custody by Defendants Zacherl and Fritz, while Defendants Spiker and Emerick swept the apartment to locate her son, who was found in a

---

[1] The factual history set forth herein has been gleaned from Defendants' concise statement of undisputed material facts [ECF No. 38], and the exhibits attached thereto, which have not been opposed by Plaintiff.

back bedroom (Id.). Plaintiff was also found present in the Subject Premises. While inside the apartment, the officers observed several items in plain view that they believed were related to the manufacture of methamphetamine: butane fuel, buckets and pots containing residue, plastic tubing, empty plastic bottles, an exacto knife, tin foil, and a box of pseudoephedrine (Id. at ¶ 4). At that time, Mary Winters was taken to the police station, Plaintiff was released, and the 6-year old child was released to the custody of Julie Winters (Id. at ¶ 5).

Defendant Hardner subsequently researched the NPLEX database for purchases and attempted purchases of pseudoephedrine by Mary Winters (hereafter, "Winters") and Plaintiff during the month of March 2017, and discovered that each completed three purchases in the Erie area between March 8 and March 27, 2017, and, together, were blocked from making three other purchases within the same time period. Specifically, on March 25, Plaintiff and Winters purchased pseudoephedrine within 30 minutes of one another from stores within a close proximity; on March 24, they made purchases within 12 minutes from one another at the same location; on March 10, they were both blocked from making purchases with 66 minutes from one another; and on March 8, they made purchases within ten minutes of one another from stores within a close proximity (Id. at ¶ 6). Based on this information, Defendant Hardner submitted an affidavit setting forth probable cause to believe that Winters and Plaintiff were manufacturing methamphetamine at the Subject Premises (Id. at ¶ 7; ECF No. 38-2). Based upon this affidavit, a search warrant was issued for the Subject Premises, where additional evidence of methamphetamine manufacture was recovered from the apartment, from a nearby dumpster, and from outside the apartment's rear window. (ECF No. 38, at ¶ 8).

On March 29, 2017, Defendant Fiorelli filed a criminal complaint against Plaintiff, which was accompanied by Defendant Hardner's affidavit of probable cause (ECF No. 38-4), and an

3

arrest warrant was issued against Plaintiff on March 30, 2017 (ECF No. 38-5). Plaintiff was subsequently taken into custody by the United States Marshal, pursuant to the arrest warrant, on April 12, 2017 (ECF No. 38, at ¶ 11).

## II. DISCUSSION

### A. Defendant MPD

Defendants argue that summary judgment should be granted in favor of Defendant MPD on all claims in this case because it has no separate identity from Millcreek Township for liability purposes. The Court agrees.

It is generally recognized that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. See e.g. Johnson v. City of Erie, Pa., 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Thus, while a municipality may be liable under §1983, a police department, as a mere sub-unit of the municipality, may not. Id.; see also, Martin v. Red Lion Police Dept., 146 Fed. App'x 558, 562 n. 3 (3d Cir. 2005) (per curiam) (noting that "the Red Lion Police Department, as the sub-division of defendant Red Lion Borough through which the Red Lion Borough fulfills its policing functions, was not a proper defendant in an action pursuant to 42 U.S.C. § 1983"); Hadesty v. Rush Twp. Police Dep't, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016) ("A municipal police department cannot be sued separately from the municipality of which it is a part because it is not a separate independent entity."); Terrell v. City of Harrisburg Police Dept., 549 F.Supp.2d 671, 686 (M.D. Pa. 2008) ("It is well-settled that police departments operated by municipalities are not 'persons' amenable to suit under §1983."). According to this authority, Defendant MPD is not a proper defendant in this case and summary judgment will be entered in its favor on all claims, accordingly.

### B. Defendant Millcreek

It is axiomatic that a municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-95 (1978). Rather, to state a claim against a municipality, the plaintiff must allege that the violation of his rights was caused either by a policy or by custom of the municipality. Id. at 694; Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000).

Here, Plaintiff alleges that, "upon information and belief," Defendant Millcreek has adopted and maintained an "unconstitutional custom that amounts to entrenched misbehavior of deliberate indifference in connection to training [its] officers in the area of investigations, arrests, and detention of suspects evinced through the patterns of [its] officers' actions, and interactions with other policing agencies whose customs have been known to be unconstitutional in nature and have become the "norm" (normal) in this area." (ECF No. 7, at ¶ 35). However, this allegation is not supported by any evidence of record, other than the circumstances involved in Plaintiff's own arrest and conviction. Yet, a policy, custom or practice cannot arise from one incident, i.e., the alleged false arrest and/or imprisonment of Plaintiff. See, e.g., Turner v. City of Philadelphia, 22 F.Supp.2d 434, 437 (E.D.Pa. 1998), quoting Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) ("Absent unusual circumstances, 'proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'").

In the absence of supporting evidence, Plaintiff's vague and conclusory allegation based solely "upon information and belief" is woefully insufficient on its own to establish an official

custom. Thus, summary judgment will be granted in favor of Defendant Millcreek on all claims in this case.

### C. False Procurement of Search Warrant Claim

Plaintiff alleges that Defendants Hardner, Fiorelli, Spiker, Zacherl, Emerick, and Fritz knowingly and intentionally used false and fabricated evidence in procuring a search warrant, which resulted in his arrest, in violation of his Fourteenth Amendment due process rights (ECF No. 7, at ¶ 37).

The Third Circuit has explained that "[a] section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in Franks v. Delaware, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir.1997). Under the Franks test, as explained in Mulvihill, "the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." Id.

The first step of the test requires the Court to determine whether the original Affidavit contains recklessly false statements or omissions. The Third Circuit explained the standards for false assertions or omissions:

> Assertions are made with reckless disregard when, "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." [Wilson, 212 F.3d] at 788 (internal quotations omitted). Assertions can be made with reckless disregard for the truth "even if they involve minor details—recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth." Id. "[O]missions are made with reckless

6

> disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know" in making a probable cause determination. Id. at 783.

Reedy v. Evanson, 615 F.3d 197, 213 (3d Cir.2010). The Third Circuit has acknowledged that because "[a]ll storytelling involves an element of selectivity, [w]e cannot demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail...." Wilson v. Russo, 212 F.3d 781, 787–88 (3d Cir.2000). "Rather, a court employs the 'common sense approach' of only looking to the omissions that are 'highly relevant.'" McGriff v. Marks, 2013 WL 1830948, at *10 (W.D. Pa. Apr. 30, 2013), quoting Wilson, 212 F.3d at 788. In making this determination, the court should view the facts not "from the deliberately slanted perspective that summary judgment demands" but rather "with scrupulous neutrality." Reedy, 615 F.3d at 232 n. 24 (3d Cir. 2010).

Even if the Court determines that a probable cause affidavit was prepared with reckless disregard for the truth, the Plaintiff's claim will still fail if the Court finds that the inaccuracies or omissions were not "material, or necessary, to the probable cause determination." Wilson, 212 F.3d at 789. In making the materiality determination, a court must perform "reconstructive surgery" on the original affidavit by first "excis[ing] offending inaccuracies and insert[ing] the facts recklessly omitted, and then determin[ing] whether or not the 'corrected' warrant affidavit would establish probable cause." Id. At this stage, the Court "engage[s] in the routine probable cause analysis, weighing the inculpatory evidence against any exculpatory evidence available to the officer." Id. at 791. In conducting this weighing, the Court must return to the ordinary summary judgment standard, and consider the Corrected Affidavit as "simply ... one more set of factual assertions that must then be viewed in the light most favorable to the non-movant." Reedy, 615 F.3d at 214 n. 24.

7

Here, Plaintiff claims that the search warrant was procured based upon false and/or fabricated evidence documented in the affidavit of probable cause included with the search warrant application. In particular, Plaintiff notes that both Defendant Zacherl's field case report (ECF No. 54-1) and Defendant Hardner's affidavit of probable cause (ECF No. 38-2, at p. 4) list several items that were observed in plain view inside the Subject Premises ("plain view items") when the officers were attempting to locate Winter's son; yet, Plaintiff alleges that only two of these items were subsequently listed on the inventory sheet that was completed after the search warrant was executed (Id. at p. 6).[2] Thus, by implication, Plaintiff concludes that the plain view items that were omitted from the subsequent inventory sheet ("omitted items") were never there in the first place but were fabricated by Defendants in order to obtain a search warrant. However, this conclusion is based solely on conjecture. Just because some of the plain view items were not subsequently listed on the search inventory does not mean that they did not exist and were fabricated by Defendants.

Nonetheless, even if the Affidavit of Probable Cause was purged of all of the allegedly fabricated items that were not listed on the search inventory list,[3] the Affidavit of Probable Cause would still show that Defendants were informed by Winters' sister that Winters was "cooking methamphetamine" at the Subject Property; that a sweep of the property revealed several items in plain view that are commonly associated with manufacturing methamphetamine (see note 2

---

[2] According to Plaintiff the only two items common to both the plain view item list and the search inventory list were an empty plastic Gatorade bottle and an empty plastic Pepsi bottle; however, a close comparison of the lists reveals that tin foil, plastic tubing (straw), a plastic container with white residue (sludge), and a backpack were also commonly found in the apartment.

[3] These items include butane fuel, a pot containing red residue, a shot glass with white residue, a small glass with white residue, an Exacto knife, and a box of pseudoephedrine (although a pill bottle is listed in the search inventory, which was recovered from the living room of the Subject Property).

herein); and that Plaintiff and Winters each completed three purchases of Sudafed in the Erie area between March 8 and March 27, 2017, and, together, were blocked from making three other purchases of Sudafed within the same time period. Moreover, these purchases and/or attempts occurred on the same dates, within minutes of each other, and within close proximities to one another. Thus, even excluding the plain view items that were not listed in the search inventory list, the Affidavit of Probable Cause would have been more than sufficient for the magisterial district judge to find probable cause to search Winters' residence for "for purpose of searching and seizing any and all illegal drugs, including methamphetamine,… or any other items used in the manufacture, sale, trade, transfer, possession, or distribution of controlled substances…." (ECF No. 38-2, at p. 5).

Accordingly, the Court finds that Plaintiff has not and cannot show that an intentionally or recklessly false statement or omission made by any of the Defendants was determinative of probable cause, such that the search warrant was obtained in violation of Plaintiff's constitutional rights. Thus, summary judgment will be granted in favor of Defendants Hardner, Fiorelli, Spiker, Zacherl, Emerick, and Fritz, and against Plaintiff, on this claim.

### D. False Arrest/False Imprisonment

Plaintiff has asserted claims of false arrest against Defendants Hardner and Fiorelli, and false imprisonment against Defendants Hardner, Fiorelli, and Kabasinski. (ECF No. 7, at ¶¶ 38-40).

To bring a section 1983 claim for either false arrest or false imprisonment under the Fourth Amendment, a plaintiff must show: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted). If probable cause to arrest is established on any one of the offenses for

which an accused is arrested, a false arrest claim under Section 1983 will fail. Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir.2007), citing Wright v. City of Philadelphia, 409 F.3d 595, 603–04 (3d Cir.2005); see also Posey v. Swissvale Borough, 2013 WL 989953, at *10 (W.D.Pa. Mar.13, 2013). Further, probable cause is conclusively established where an accused enters a guilty plea. See Ross v. Donkocik, 60 F. App'x 409, 410 n. 1 (3d Cir.2003), citing Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); McIntosh v. Crist, 2015 WL 418982, at *5 (W.D.Pa. Feb. 2, 2015); Imbergamo v. Castaldi, 392 F.Supp.2d 686, 696-97 (M.D.Pa. 2005).

Here, Plaintiff entered a guilty plea to two charges that arose out of the criminal complaint at issue in this case, thus conclusively establishing probable cause and negating his claims of false arrest and false imprisonment. As a result, summary judgment will be granted in favor of Defendants Hardner, Fiorelli, and Kabasinski and against Plaintiff on these claims.

### E.     Malicious Prosecution and/or Conspiracy to Commit Malicious Prosecution

Plaintiff asserts that "Defendant Hardner conspired with Defendant Fiorelli to violate plaintiff's rights to due process, which commenced a malicious prosecution, which ultimately ensued the unlawful and unreasonable seizure (false arrest) and unlawful detention and/or false imprisonment constituting violations of the plaintiff's rights under the fourth and fourteenth amendments to the Constitution of the United States" (ECF No. 7, at ¶ 41). Although not entirely clear, this appears to be a malicious prosecution claim wrapped within an overarching conspiracy claim. Both claims will, thus, be considered.

To establish a malicious prosecution claim under 42 U.S.C. § 1983, Plaintiff must show that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff

suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007), citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

Here, Defendants argue that Plaintiff is unable to establish a malicious prosecution claim, as a matter of law, because he cannot show that the underlying criminal proceeding ended in his favor due to his guilty plea. Plaintiff has since conceded this point (ECF No. 54, at pp. 2, 14). Summary judgment will, thus, be granted in favor of Defendants Hardner and Fiorelli and against Plaintiff on this claim.

To establish a claim of conspiracy in the context of a civil rights action, the plaintiff must show that two or more conspirators reached an agreement to deprive him of a constitutional right. Royster v. Beard, 308 Fed. Appx. 576 (3d Cir. 2009). Since this Court has already determined that Plaintiff is unable to prove the underlying claims of malicious prosecution, false arrest, and false imprisonment as a matter of law, Plaintiff is consequently unable to establish a cognizable conspiracy claim. So, summary judgment will similarly be granted in favor of Defendants Hardner and Fiorelli and against Plaintiff on this claim.

### F. Failure to Train and/or Supervise

Finally, Plaintiff has asserted a supervisory liability claim against Defendants Heidt, Kabasinski, Brock, Groh, and Morgan, for failure "to supervise, and properly train their officers in the area of investigations, arrests, detention of suspects, and their deliberate indifference to the entrenched behaviors or unconstitutional customs and patterns depicted by their officers' actions, of knowingly (sic) and intentional use of false and fabricated evidence…." (ECF No. 7, at ¶ 42).

"[T]he inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the

11

police come into contact." Ickes v. Borough of Bedford, 807 F. Supp. 2d 306, 324 (W.D. Pa. 2011), quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989). Further, the plaintiff must "show there was a "direct causal link" between the municipal decision at issue (i.e. the decision to not properly train employees) and the constitutional or statutory violation for which redress is sought." Ickes, 807 F. Supp. at 325-26, quoting Harris, 489 U.S. at 404.

Here, the Court has already determined that Plaintiff is unable to establish that any constitutional violation occurred as a result of the conduct of the Defendant police officers. Thus, the supervisory Defendants cannot be found liable for being deliberately indifferent in their training and supervision of those officers. Consequently, summary judgment will be granted in favor of Defendants Heidt, Kabasinski, Brock, Groh, and Morgan, and against Plaintiff, on this claim.

An appropriate Order follows.